# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| ADRIAN MARSHALL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHCROSS ENERGY PARTNERS, L.P., SOUTHCROSS ENERGY PARTNERS GP, LLC, SOUTHCROSS HOLDINGS LP, SOUTHCROSS HOLDINGS GP LLC, BRUCE A. WILLIAMSON, DAVID W. BIEGLER, ANDREW A. CAMERON, NICHOLAS J. CARUSO, JR., JASON H. DOWNIE, JERRY W. PINKERTON, RANDALL S. WADE, BRET M. ALLAN, AMERICA MIDSTREAM PARTNERS, LP, and CHEROKEE MERGER SUB LLC,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Adrian Marshall ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Southcross Energy Partners, L.P. ("Southcross" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, unitholder communications, and postings on the Company's website

concerning the Company's public statements; and (d) review of other publicly available information concerning Southcross and the Defendants.

## SUMMARY OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public unitholders of Southcross Energy Partners, L.P. ("Southcross" or the "Company") against Southcross Energy Partners GP, LLC's Board of Directors (the "Board" or the "Individual Defendants"), which manages the Company, and the Board of Directors of Southcross Holdings GP LLC (the "Holdings Board") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to American Midstream Partners, LP through its wholly-owned subsidiary Cherokee Merger Sub LLC (collectively "American Midstream").

2.    On October 31, 2017, Southcross entered into an Agreement and Plan of Merger (the "Merger Agreement") with American Midstream, pursuant to which American Midstream will acquire equity interests in subsidiaries of Southcross Holdings LP that own Southcross Energy Partners GP, LLC, and will also acquire approximately 55% of the Company's common units.   In addition, the Company's public unitholders will receive 0.160 common units of American Midstream for each unit of Southcross that they hold.   In total, the deal is valued at approximately $815 million.   According to Company filings, Southcross will hold its special meeting of its unitholders on March 27, 2018 to consider and vote upon a proposal to approve and adopt the previously announced Merger Agreement.

3.    On January 11, 2018, Southcross authorized the filing of a Registration Statement on Form S-4 (the "Registration Statement") by American Midstream with the SEC. The Registration Statement recommends that Southcross unitholders vote in favor of a proposed

transaction (the "Proposed Transaction") whereby Southcross will be merged with a wholly owned subsidiary of American Midstream.

4.     The Registration Statement omits material information with respect to the Proposed Transaction in violation of Sections 14(a) and 20(a) of the Exchange Act.   In particular, the Registration Statement contains materially incomplete and misleading information concerning the sales process behind the Proposed Transaction, financial projections prepared by the Company's management, and the financial analyses conduced by financial advisor Jefferies LLC ("Jefferies").

5.     The Proposed Transaction serves no legitimate business purpose of Southcross but rather is an attempt by Defendants to enable American Midstream to benefit unfairly from the transaction at the expense of the Company's unitholders.  The proposed plan will, for grossly inadequate consideration, limit Plaintiff and the other members of the Class their right to share proportionately in the future success of Southcross and its valuable assets, while permitting American Midstream to reap huge benefits from the transaction.

6.     By reason of the foregoing, the Individual Defendants have violated their fiduciary duties to Southcross and its unitholders.  Plaintiff and the Class have suffered and will suffer irreparable injury unless Defendants are enjoined from breaching their fiduciary duties and from carrying out the aforesaid plan and scheme.

7.     As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction. In the event that the Proposed Transaction is consummated, Plaintiff seeks to recover damages from the Defendants for their breaches of fiduciary duties and from American Midstream and its affiliates for aiding and abetting said breaches.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits unitholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Further, the Company's principal executive offices are located in this District.

## THE PARTIES

11.     Plaintiff is, and has been at all times relevant hereto, the owner of Southcross common units.

12.     Defendant Southcross is a Delaware corporation with its principal executive offices located at 1717 Main Street, Suite 5200, Dallas, Texas 75201.  The Company's common stock is traded on the NYSE under the symbol "SXE."

13.     Defendant Southcross Energy Partners GP is a Delaware limited liability company.  Southcross Energy Partners GP, LLC is the general partner of Southcross, and its board of directors and executive officers operate and manage Southcross.

14.     Defendant Southcross Holdings LP is a Delaware limited partnership.  Southcross Holdings LP owns 100% of Southcross GP and controls Southcross GP.

15.     Defendant Southcross Holdings GP LLC is a Delaware limited liability company. Holdings is the general partner of Southcross Holdings LP, Tailwater Capital, LLC, and EIG Global Energy Partners, LLC each own one-third of Holdings.

16.     Defendant Bruce A. Williamson ("Williamson") has been the Chairman, President and Chief Executive Officer ("CEO") of the Company since January 2017. Defendant Williamson has been a member of the Board since April 2013.

17.     Defendant David W. Biegler ("Biegler") has been a director of the Company since October 2012. Defendant Biegler was previously the Company's Chairman of the Board from October 2012 through January 2017, CEO from October 2012 to December 2014 and President from October 2012 to March 2014. From July 2009 until the Company's initial public offering in October 2012, Defendant Biegler served as Chairman of the Board and CEO of Southcross Energy LLC, the Company's predecessor.

18.     Defendant Andrew A. Cameron ("Cameron") has been a director of the Company since December 2016. Defendant Cameron is a member of the Board's Audit Committee, Compensation Committee and Conflicts Committee. With respect to Defendant Cameron's Audit Committee membership, the Company notes that he qualifies as an "audit committee financial expert."

19.     Defendant Nicholas J. Caruso, Jr. ("Caruso") has a director of the Company since July 2015. Defendant Caruso is a member of the Board's Audit Committee, Compensation Committee and Conflicts Committee. With respect to the Defendant Caruso's Audit Committee membership, the Company notes that he qualifies as an "audit committee financial expert."

20.    Defendant Jason H. Downie ("Downie") has been a director of the Company since August 2014.   Defendant Downie is the Chairman of the Board's Compensation Committee.

21.    Defendant Jerry W. Pinkerton ("Pinkerton") has been a director of the Company since April 2012.  Defendant Pinkerton is the Chairman of the Board's Audit Committee and Conflicts Committee.  With respect to Defendant Pinkerton's Audit Committee membership, the Company notes he qualifies as an "audit committee financial expert."

22.    Defendant Randall S. Wade ("Wade") has been a director of the Company since December 2017.

23.    Defendant Bret M. Allan ("Allan") has been Senior Vice President and Chief Financial Officer ("CFO") of the Company since June 2015.

24.    Defendants Williamson, Biegler, Cameron, Caruso, Downie, Pinkerton, Wade and Allan are collectively referred to herein as the "Individual Defendants."

25.    Defendant American Midstream is a Delaware Limited Partnership with its principal executive offices located at 2103 City West Blvd., Bldg 4, Suite 800, Houston, Texas 77042.

26.    Defendant Cherokee Merger Sub LLC is a Delaware corporation and a wholly-owned subsidiary of American Midstream.

**DEFENDANTS' FIDUCIARY DUTIES**

27.    By reason of the Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public unitholders of Southcross and owe Plaintiff and the other members of the Class a duty of good faith, fair dealing, loyalty and full and candid disclosure.

6

28.     By virtue of their positions as directors and/or officers of Southcross, the Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Southcross to engage in the practices complained of herein.

29.     Each of the Defendants is required to act in good faith, in the best interests of the Company's unitholders and with due care, including reasonable inquiry, as would be expected of an ordinarily prudent person. In a situation where the directors of a publicly-traded company undertake a transaction that may result in a change in corporate control, the law imposes the obligation on the directors to take all steps reasonably required to maximize the value that unitholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the unitholders to make an informed voting decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

      a.  adversely affects the value provided to the corporation's unitholders;

      b.  contractually prohibits them from complying with or carrying out their fiduciary duties;

      c.  discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

      d.  otherwise adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's unitholders.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public unitholders of Southcross (the "Class"). Excluded from the

Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

31.     This action is properly maintainable as a class action for the following reasons:

a.     The Class is so numerous that joinder of all members is impracticable. As of November 6, 2017, there were 48,614,187 Southcross common units outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Registration Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Registration Statement as currently composed.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.      A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

32.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

33.     Southcross, provides natural gas gathering, processing, treating, compression and transportation services and natural gas liquids ("NGLs") fractionation and transportation services. It also sources, purchases, transports and sells natural gas and NGLs. Its assets are located in South Texas, Mississippi and Alabama and include two gas processing plants, one fractionation plant and approximately 3,100 miles of pipeline.

### The Company Announces the Proposed Transaction

34.     On November 1, 2017, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

> HOUSTON, Nov. 01, 2017 (GLOBE NEWSWIRE) -- Southcross Energy Partners, L.P. (NYSE:SXE) ("SXE" or "Southcross Energy") today announces that it has signed an agreement with American Midstream Partners, LP (NYSE:AMID) ("AMID" or "American Midstream") whereby AMID has proposed to merge Southcross Energy into a wholly owned subsidiary of AMID and that Southcross Holdings, LP ("Southcross Holdings") (collectively, with Southcross Energy referred to as "Southcross") has entered into a separate agreement with AMID whereby AMID will acquire certain assets of Southcross Holdings. The two separate transactions are valued in the aggregate at approximately $815 million, including the repayment of net debt. As a result of the transactions, the pro forma partnership with an enterprise value of $3 billion is expected to generate annualized 2018 Adjusted EBITDA in excess of $300 million.
>
> Lynn L. Bourdon, III, Chairman, President and Chief Executive Officer of American Midstream, commented, "This transaction accelerates our transformation into a fully integrated gathering, processing and transmission

company focused in select core areas. The transaction also furthers our strategy of redeploying capital into higher growth businesses along with divesting non-core assets at attractive multiples."

"The addition of the Southcross assets allows us to capture the full midstream value chain in the very prolific Eagle Ford basin. The transaction represents a unique opportunity to expand our onshore gathering, processing and transmission services, linking supplies from the economically attractive Eagle Ford shale to high demand growth markets along the Gulf Coast."

\*      \*      \*

"Given the compelling rationale for the acquisition, we anticipate that our combined unitholders should benefit from the partnership's increased scale, greater financial flexibility, and operational density. The integration and commercialization of the acquired assets will contribute to our growth and help establish solid distribution growth over time," Mr. Bourdon added.

"This combination with American Midstream provides significant benefits to all of Southcross' stakeholders," said Bruce A. Williamson, President and Chief Executive Officer of Southcross' general partner. "Private and public equity holders from both Southcross Holdings and Southcross Energy will be able to participate in a more diverse, sustainably capitalized company with units that offer immediate cash distributions and strong coverage.  In addition, the revolver and term debt holders at both Southcross companies will be repaid in full at closing. We look forward to working with Lynn and his team during the transition to create value for our investors."

Southcross Holdings indirectly owns all of the equity interest in the general partner of SXE and indirectly owns gas pipeline, treating and fractionation facilities in the Eagle Ford Shale and elsewhere in South Texas. SXE is an integrated natural gas midstream services provider with assets primarily in the Eagle Ford as well as Mississippi and Alabama.

\*      \*      \*

**TRANSACTION DETAILS**

AMID has agreed to acquire equity interests in certain Southcross Holdings' subsidiaries that directly or indirectly own 100% of the limited liability company interests of the general partner of SXE and approximately 55% of the SXE common units by issuing 3.4 million AMID common units, 4.5 million new Series E convertible preferred units (the "Preferred Units"), options to acquire 4.5 million AMID common units (the "Options") and the repayment of $139 million of estimated net debt. The Preferred Units will be issued at a price of $15.00 per unit and may be paid-in-kind at the AMID common unit distribution rate at AMID's option for two years. AMID will have the right to convert the Preferred Units to AMID common units if the AMID 20-day volume weighted

average price exceeds $22.50. The Options are American-style call options with an $18.50 strike price that expire in 2022.

Public unitholders of SXE will receive 0.160 AMID common units for each SXE common unit in a unit-for-unit merger, which is anticipated to have minimal, if any, tax recognition for such unitholders and which represents a 5% premium to the 20-day volume weighted average exchange ratio of AMID and SXE common units as of October 30, 2017. The SXE transaction is conditioned on the Southcross Holdings transaction, and until both transactions have closed AMID, Southcross Holdings and SXE will continue to operate as separate companies.

AMID expects the proposal to be attractive to public holders of SXE common units as it will permit them to participate in the future anticipated growth of AMID's businesses, including the benefit of AMID's cash distributions on common units, currently paying $1.65 per common unit annually.

As part of the transaction, AMID's sponsor, an affiliate of ArcLight Capital Partners, LLC, has agreed to transfer ownership of 15% of AMID's general partner and incentive distribution rights to Southcross Holdings.

In conjunction with the transaction, AMID will continue executing against its stated capital optimization strategy to deliver a strong pro forma balance sheet with substantial liquidity. AMID is targeting an additional $400 to $500 million of non-core asset sales primarily related to its terminaling services segment. These proceeds, incremental debt financing and modest equity will allow the combined entity to target closing pro forma trailing debt to EBITDA of near 4.5 times with a 12- to 18-month goal of near 3.5 times and target pro forma liquidity of $300 to $400 million.

AMID expects the transaction to be single-digit accretive to DCF/unit in 2018 and 2019, approaching double-digit accretion in 2020. AMID expects to maintain a pro forma distribution coverage of 1.1 to 1.3 times.

The terms of the proposed merger with SXE will be subject to approval by a majority of the outstanding non-affiliated public common unitholders of SXE, and the transaction with Southcross Holdings and SXE will be subject to customary regulatory approvals and is currently expected to close in the second quarter of 2018.

**ADVISORS**

Deutsche Bank acted as lead financial advisor and BofA Merrill Lynch acted as financial advisor to American Midstream. Gibson Dunn & Crutcher, LLP acted as legal counsel to American Midstream. RBC Capital Markets acted as lead financial advisor, Wells Fargo Securities acted as financial advisor and Locke Lord LLP acted as legal counsel to Southcross Holdings and Southcross Energy. Tudor, Pickering, Holt & Co acted as financial advisor and Jones Day acted as legal advisor to the Special Committee of Southcross Holdings. Jefferies

LLC acted as financial advisor and Akin Gump Strauss Hauer & Feld LLP acted as legal advisor to the Conflicts Committee of Southcross Energy.

35.     The Proposed Transaction, as currently contemplated, is unfair to Southcross's unitholders (as set forth below).  As such, the Defendants have breached their fiduciary duties to the Company's unitholders.

### The Proposed Transaction is Unfair to the Company's Unitholders

36.     The Proposed Transaction serves primarily as a benefit for American Midstream. At the close of the Proposed Transaction, projections show the ensuing company will have an enterprise value of nearly $3 billion and adjusted EBITDA of more than $300 billion per year. Both Southcross and American Midstream calculate that there will be financial synergies of $15-$20 million per year within 18 months of the close of the Proposed Transaction.  To that end, the President and CEO of American Midstream has called the Proposed Transaction "an absolute game changer" for American Midstream.

37.     Despite the above referenced projected gains, American Midstream has offered an exchange ratio for the Company's common units that does not adequately compensate the Company's unitholders.

38.     On May 24, 2017, American Midstream proposed a transaction whereby the Company's non-affiliated unitholders would receive $80 million in American Midstream common units.  The proposal was then revised on July 13, 2017, with American Midstream stating that non-affiliated Southcross unit holders would receive 0.230 American Midstream common units per Southcross common unit, representing a total value to the Company's unitholders of $68 million.

39.     On August 8, 2017, another proposal was made whereby the exchange ratio increased slightly, but on September 20, 2017, American Midstream proposed an exchange ratio

of 0.159 American Midstream common units per non-affiliated Southcross common units, representing a 10% discount on the exchange ratio proposed on September 14, 2017.  Ultimately, the Registration Statement reflects that the Southcross Conflicts Committee had to negotiate with a committee formed by the Holdings Board in order to increase the ratio offered to 0.160, an increase of merely one one-hundredth of a unit.

40.     The analyses conducted by financial advisor Jefferies provide further support to the notion that the Merger Consideration is inadequate to the Company's unitholders.  For instance, in the sections titled *Selected Public Companies Analysis* and *Selected Transaction Analysis*, Jefferies noted an exchange rate as high as 0.245, while the section titled *Discounted Cash Flow Analysis* noted an exchange rate as high as 0.203.  Both of these numbers are significantly higher than that actually achieved pursuant to the Proposed Transaction.

41.     Perhaps the best illustration of the process by which the exchange ratio was ultimately determined was the steps taken by the Board in order to agree to the Proposed Transaction.  Southcross Holding LP was a dominant player in the negotiations, and in essence forced the Company's Board into a sale with American Midstream.

42.     For instance, when the Company made the decision to consider alternatives, the Holdings Board was the one who would choose the parties that were invited to participate in the second round of the negotiation process.  The Registration Statement notes that on May 26, 2017, the Holdings Board decided to negotiate a transaction with American Midstream without discussing the issue with the Company's Board. Registration Statement, at 54.  No information about these proposals were provided to the Board until June 1, 2017. Registration Statement, at 55.

43.     While the Company outwardly stated that the Conflicts Committee would evaluate potential alternatives for the Company, this was not in fact the case.  On at least four different occasions, Company D proposed different transactions with the Company or Southcross Holdings LP.    These proposals were deemed "inferior" to the Proposed Transaction. Registration Statement, at 56-58.

44.     Indeed, seeing that the Holdings Board was controlling negotiations, the Conflicts Committee requested a meeting with Southcross Holdings LP representatives in order to discuss the latest proposal and ongoing negotiations.  Following that meeting, Defendants Pinkerton, Caruso and Biegler met, in person, with Defendant Williamson and a Tailwater representative to discuss the Proposed Transaction. The result of that meeting was that the Conflicts Committee would negotiate with Southcross Holdings LP about how the total merger consideration would be allocated between the two companies. There would not, however, be any negotiations with American Midstream to increase the exchange ratio.  Eventually the Conflicts Committee agreed to an exchange ratio only one one-hundredth greater than originally offered by American Midstream.

45.     The negotiation process for the Proposed Transaction was also tainted by conflicts.  Most notably, Defendant Williamson, the CEO and President of the Company, was involved in negotiating the consideration to be received by Southcross Holdings LP.

46.     In addition, Wells Fargo Securities, LLC served as a financial advisor to the Holdings Board, despite Wells Fargo Bank, N.A. being a party to an investment agreement with Southcross Holdings LP and Southcross, as well as a backstop commitment letter with both companies, related to a waiver agreement and amendment to the Company's revolving credit agreement.

**The Merger Agreement Contains Preclusive Deal Protection Devices**

47.     The Proposed Transaction is further unfair to the Company's unitholders, as Defendants agreed to certain preclusive deal protection devices that ensure no competing offers for the Company would emerge, effectively locking up the deal for American Midstream.

48.     For instance, the Merger Agreement includes a "no solicitation" provision which prevents the Company from either soliciting or encouraging the submission of an alternate acquisition proposal.

49.     In addition, pursuant to the Merger Agreement, the Company must notify American Midstream of any offer, indication of interest, or request for information made by an unsolicited bidder.  Should the Company's Board determine that the unsolicited offer is superior to the Proposed Transaction, the Company is required to grant American Midstream five calendar days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior.  The Company must provide American Midstream with the identity of the unsolicited bidder and the material terms of the superior proposal, thereby removing any leverage that Southcross has in receiving the unsolicited offer.

50.     In effect, the terms of the Merger agreement give American Midstream the guarantee that it will be the Company's only suitor.  As such, no rival bidder would likely emerge.

51.     These preclusive deal protection provisions greatly restrain the Company's ability to solicit or engage in negotiations with any other party regarding a proposal to acquire all or a significant interest in the Company.  As such, the Proposed Transaction is unfair to the Company and its unitholders.

**Defendants Cause the Company to Authorize the Filing of a Materially Incomplete and
Misleading Registration Statement**

52.     On January 11, 2018, Defendants Southcross authorized the filing of the
Registration Statement by American Midstream with the SEC.   The Registration Statement
misrepresents or omits material information that is necessary for the unitholders to decide
whether to vote in favor of the Proposed Transaction.

53.     Defendants were obligated to carefully review the Registration Statement prior to
its filing with the SEC and dissemination to the Company's unitholders to ensure that it did not
contain any material misrepresentations or omissions.   However, the Registration Statement
misrepresents and/or omits material information that is necessary for the Company's unitholders
to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

54.     Specifically, as set forth below, the Registration Statement omits material
information or provides unitholders with materially misleading information concerning the sales
process behind the Proposed Transaction, financial projections prepared by the Company's
management, and the financial analyses conducted by financial advisor Jefferies.

55.     The Registration Statement contains management-prepared projections regarding
the Company's financials, which are materially misleading.   In connection with Jefferies's
fairness opinion, Jefferies reviewed information provided by the Company's management
"including financial forecasts and analyses, relating to the business, operations and prospects" of
the Company, as well as similar information about American Midstream provided by American
Midstream's management.   The Registration Statement fails to provide certain information in
these provided projections.

56.     In particular, Defendants did not provide projections for the Company's finances for fiscal years 2017 through 2020 for the following categories: (i) interest expense; (ii) maintenance capital expenditures; (iii) growth capital expenditures; and (iv) free cash flow.

57.     Additionally, Defendants failed to provide financial projections for American Midstream during that same period of time for the following: (i) cash paid for interest; (ii) preferred unit distributions; (iii) income tax expense; and (iv) maintenance capital expenditures.

58.     The Registration Statement notes that Southcross and American Midstream expect the Proposed Transaction to result in certain cost savings and synergies (as noted above), but the Registration Statement does not quantify and disclose the amount of those expected synergies.  Further, the Registration Statement fails to disclose whether those synergies were in fact incorporated into Jefferies' analyses.

59.     Regarding Jefferies' *Selected Public Company Analysis* of both Southcross and American Midstream, the Registration Statement does not disclose the individual multiples and financial metrics for each of the companies observed by Jefferies in making its analysis.

60.     Regarding Jefferies' *Selected Transaction Analysis*, the Registration Statement does not disclose the individual multiples and financial metrics for each of the transactions examined by Jefferies in making its analysis.  Further, as the lowest observed TV/ FY+1 ADJ EBITA multiple of the selected transactions was 11.2x, Defendants must explain the basis by which Jefferies selected the multiple reference range of 9.0x to 10.0x to apply to the Company's estimated 2018 Adjusted EBITDA.

61.     Regarding Jefferies' *Discounted Cash Flow Analysis* of the Company, the Registration Statement does not disclose the following: (i) the "free cash flows" of the Company for 2017 to 2020, as well as the applicable line items used by Jefferies in its analysis; (ii) the

specific inputs and assumptions underlying Jefferies discount range of 10.6% to 11.6%; (iii) the Company's cash, cash equivalents, and total debt as of June 30, 2017; and (iv) the perpetuity growth rates implied by Jefferies' analysis.

62.     Similarly, regarding Jefferies' *Discounted Cash Flow Analysis* of American Midstream, the Registration Statement does not disclose the following: (i) specific inputs underlying the discount range of 15.6% to 16.6% used in its analysis; (ii) the terminal exit multiples implied by its analysis; and (iii) American Midstream's cash, cash equivalents, and total debt as of June 30, 2017.

63.     Regarding Jefferies' *Premiums Paid Analysis*, the Registration Statement does not disclose individual premiums for each of the transactions examined in its analysis.

64.     In addition, the Registration Statement fails to disclose material information relating to potential conflicts of interest of financial advisor Jefferies.   The Registration Statement notes that "[i]n the past, Jefferies has provided financial advisory services to the [Southcross] Conflicts Committee and financial advisory services to [American Midstream] and may continue to do so and has received, and may receive, fees for the rendering of such services."   However, the Registration Statement does not disclose the nature, timing, and terms of these past financial advisory service to American Midstream, including the compensation earned in rendering those services.

65.     The Registration Statement also fails to provide material information regarding the background leading up to the Proposed Transaction.   An accurate and complete description of the process the Board used in entering into the Proposed Transaction is indeed material to the Company's unitholders, as it is vital information to determine whether or not to support the Proposed Transaction.

66.     For instance, the Registration Statement notes that the Company entered into confidentiality agreements with roughly 27 parties that express interest in engaging in a transaction with Southcross.  However, the Registration Statement does not provide the terms of these confidentiality agreements, including, but not limited to, whether they contain standstill and/or "don't ask, don't waive" provisions which would prevent the parties from making an unsolicited superior proposal to the Company.

67.     Moreover, the Registration Statement does not disclose the economic and other terms proposed by the above parties that submitted proposals to engage in a transaction with the Company.  This includes the terms of Company D's October 4, 2017 proposals to enter into a transaction with the Company, which was ultimately ignored due to the preclusive deal protection devices set forth above.  This information is material to the Company's unitholders, as it would allow them to properly assess whether the Proposed Transaction is indeed the best one available to the Company.

68.     The omission of the above materials renders the Registration Statement materially incomplete and misleading, as unitholders will be unable to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction without proper disclosures.  As such, unitholders are threatened irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

69.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

71.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

72.     The Defendants have issued the Registration Statement with the intention of soliciting unitholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

73.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

74.     The Defendants knew or were negligent in not knowing that the Registration

Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

75.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

76.    The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

77.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

78.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the

immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

79.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

80.     The Individual Defendants acted as controlling persons of Southcross within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Southcross, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

81.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

83.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

84.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

85.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

86.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      Directing the Individual Defendants to disseminate an Amendment to its Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 2, 2018                               Respectfully submitted,

                                                      /s/ Marc R. Stanley
                                                      Marc R. Stanley
                                                      State Bar No. 19046500
                                                      marcstanley@mac.com
                                                      Martin Woodward
                                                      State Bar No. 00797693
                                                      mwoodward@stanleylawgroup.com
                                                      Scott Kitner
                                                      State Bar No. 24065563
                                                      skitner@stanleylawgroup.com

                                                      STANLEY LAW GROUP
                                                      6116 North Central Expressway, Suite 1500
                                                      Dallas, Texas 75206
                                                      (214) 443-4300
                                                      (214) 443-0358 (Facsimile)

                                                      *Attorneys for Plaintiff*

**OF COUNSEL:**

Joshua M. Lifshitz (to be admitted *pro hac vice*)
**LIFSHITZ & MILLER LLP**
821 Franklin Ave, Suite 209
Garden City, NY 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376
Email: jml@jlclasslaw.com